## IN THE U.S. DISTRICT COURT OF MARYLAND
## FOR DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Reginald Feazell** | * | |
| **331 Ellerton South** | | |
| **Laurel, Maryland 20724** | * | |
| | | |
| **Plaintiff** | * | |
| | | |
| **v.** | * | **Case No. _____** |
| | | **JURY TRIAL REQUESTED** |
| **Capital Contractors, Inc.** | * | |
| **88 Duryea Road** | | |
| **Melville, New York 11747** | * | |
| | | |
| **and** | * | |
| | | |
| **Top Notch Cleaning Solutions, LLC** | * | |
| **496 Imperial Square** | | |
| **Odenton, Maryland 21113** | * | |
| | | |
| **Together, "Defendants"** | * | |
| _____/ | | |

## COMPLAINT UNDER THE
## FAIR LABOR STANDARDS ACT FOR MONEY DAMAGES

Plaintiff, Mr. Reginald "Reggie" Feazell (hereinafter referred to as "Plaintiff"), and

through undersigned counsel, state a complaint against Defendants Capital Contractors, Inc. and

Top Notch Cleaning Solutions, LLC ("Defendants"), who together are individually and jointly

liable as a single enterprise/joint employer pursuant to the Fair Labor Standards Act of 1938, 29

U.S.C. §§ 201 *et seq.* ("FLSA"), and a supplemental state law claim under Maryland's Wage

and Hour Law, Md. Ann. Code LE art. § 3-401 *et seq.* ("MWHL"), and Maryland's Wage

Payment and Collection Law ("MWPCL"), Md. Ann. Code LE art. § 3-501 et seq., and demand

a jury trial, as follows:

### Introduction, Venue, and Jurisdiction

1.      For a variety of legal reasons, a number of major cleaning companies across the United

States have sought to grow their business (and hence, profits) through franchising and "subcontracting" traditional employment relationships.  The U.S. Department of Labor states that "[t]he misclassification of employees as independent contractors presents one of the most serious problems facing affected workers, employers and the entire economy." https://www.dol.gov/whd/workers/misclassification/ (last visited June 21, 2016).  This case concerns a commercial janitorial cleaning company, Capital Contractors, Inc., who relies on a network of unsophisticated "subcontractors" (who it refers to as "service partners") to perform the actual cleaning on contracts that it secures and bills for payment.  This case is about the abuse that arises from such an arrangement.  This case thus presents important issues relating to the enforcement of the protections afforded by the FLSA, and similar Maryland wage payment and wage/hour laws.

2.      This is a lawsuit brought by Reginald ("Reggie") Feazell, who from May 2015 through February 2016, performed commercial cleaning at various sites.  Plaintiff was paid through Top Notch Cleaning Solutions, LLC, who in turn was paid for the work that Plaintiff performed by Capital Contractors, Inc. on janitorial related work contracts executed by Capital Contractors, Inc.  Plaintiff alleges that he was employed by Defendants Top Notch Solutions, LLC and Capital Contractors, Inc.  As the allegations set forth below further state, Plaintiff took direction from staff of Capital Contractor, Inc., who negotiated cleaning contracts that Plaintiff and others performed work on.  Plaintiff, and others within Top Notch Cleaning Solutions, LLC, went unpaid because of the actions (or inactions) by Capital Contractors, Inc., when Capital Contractors, Inc. chose to withhold payments for work performed by workers paid through Top Notch Cleaning Solutions, LLC.

3.      Plaintiff is a resident of Howard County, Maryland and is a citizen of the United States

of America and at all times relevant to this lawsuit, was legally eligible to be employed under the Immigration Reform and Control Act.  Upon information and belief, Defendants Capital Contractors, Inc. is incorporated in the State of New York.  Top Notch Cleaning Solutions, LLC is a limited liability corporation formed under the laws of the State of Maryland.

4.      By failing to receive minimum wage and overtime amounts due, from time to time, Plaintiff alleges that Defendants violated the overtime and minimum wage provisions of the FLSA.  Similarly, the Plaintiff alleges that the Defendants violated the minimum wage and overtime provisions of the MWHL, and similarly, failed to pay wages due pursuant to the MWPCL.

5.      In addition to actual sums owed, Plaintiff seeks liquidated (statutory) damages pursuant to the FLSA and the MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWPCL.

6.      At all times material herein, the Defendants, in the aggregate (and acting together as a single business enterprise combined with the other corporate entities operated by Defendant Capital Contractors, Inc.) have had annual gross volume of sales made or business done in an amount exceeding $500,000.00.

7.      Defendants Capital Contractors, Inc. and Top Notch Cleaning Solutions, LLC, separately and together have at least two or more employees who are engaged in commerce, produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce.  For instance, there are employees of the Defendants who use office supplies and cleaning products that have moved in interstate commerce.  Accordingly, subject matter jurisdiction exists because the Plaintiff is employed by the Defendants, a single enterprise, which satisfies the enterprise coverage provisions under the

FLSA. Defendants also satisfy the coverage provisions of the MWHL. As a single enterprise, Defendants Capital Contractors, Inc. and Top Notch Cleaning Solutions, LLC have been, at all times material herein, an "employer" within the meaning of the FLSA.

8.      Venue is proper. The acts complained of occurred within this Judicial District.

9.      This Court has subject matter jurisdiction to hear these FLSA claims and may exercise supplemental jurisdiction over the MWHL and MWPCL claims.

<u>**Factual Allegations**</u>

10.     For purposes of Plaintiff's FLSA claims, and at all times relevant to the events alleged in this complaint, Plaintiff was an employee of a single enterprise consisting of each of the corporate Defendants (and potentially other unknown entities), as provided under 29 U.S.C. § 203.

11.     Plaintiff began performing work on May 19, 2015.

12.     Plaintiff cleaned businesses which had contracted with Capital Contractors, Inc. and/or Top Notch Cleaning Solutions, LLC.

13.     Plaintiff previously knew the operators of Top Notch Cleaning Solutions, LLC, Mr. Deion Cannon and Mrs. LaTanya Cannon, before he began performing work.

14.     Plaintiff was hired with an initial starting pay of $800.00 per month, "under the table" (subject to no withholdings).

15.     After approximately two months, Plaintiff's pay was increased to $1200.00 per month, also "under the table" (subject to no withholdings).

16.     Throughout the course of his employment, Plaintiff worked long hours, far in excess of forty hours a week, in which he was not compensated overtime.

17.     Initially, Plaintiff would begin his day around 5:30 pm, where he would clean three

daycare facilities and an office building located in the Baltimore area.

18.     The daycare facilities contracted with Capital Contractors, Inc., and Capital Contractors, Inc. in turn contracted with Top Notch Cleaning Solutions, LLC to perform the actual cleaning work.

19.     After this work was performed Plaintiff would travel to a "Texas Roadhouse" restaurant located in Bowie, Maryland.

20.     Plaintiff would typically begin cleaning the Texas Roadhouse restaurant at 1:30 am.

21.     Texas Roadhouse contracted with Capital Contractors, Inc., and Capital Contractors, Inc. in turn contracted with Top Notch Cleaning Solutions, LLC to perform the actual cleaning work.

22.     At Texas Roadhouse, Plaintiff would clean by himself the entire dining room area of the restaurant and its bathrooms.

23.     The work included using a deck scrub brush to clean the restaurant's unique floor.

24.     Plaintiff would leave Texas Roadhouse once the cleaning work was complete, typically around 6:30 am.

25.     From there, Plaintiff would travel to an H&M retail clothing store, located in Timonium, Maryland.  The clothing store had two levels.

26.     Defendant Capital Contractors, Inc. required that a worker be present to clean the H&M retail store from 7:00 am to 11:00 am.

27.     H&M contracted with Capital Contractors, Inc., and Capital Contractors, Inc. in turn contracted with Top Notch Cleaning Solutions, LLC to perform the actual cleaning work.

28.     The manager at H&M would refer to Capital Contractors, Inc. as its cleaning contractor. Plaintiff was informed that the contract to perform cleaning services was between H&M and

Capital Contractors, Inc.

29.     Plaintiff performed worked consistently for Defendants from May 19, 2015 to February 19, 2016.  Plaintiff worked seven days a week, and Plaintiff's only days off were Thanksgiving day and three days during which heavy snows closed businesses in the area.

30.     However, Plaintiff's hours changed once the cleaning accounts for the daycare facilities and the office facility were lost, a few months into Plaintiff's employment.

31.     Once the daycare facilities and office building contracts were lost, Plaintiff would begin his day at Texas Roadhouse restaurant and work until the cleaning was complete at H&M.

32.     Plaintiff's employment involved a level of supervision, interaction, and dependence by Capital Contractors, Inc.

33.     For example, Plaintiff first met Capital Contractors, Inc.'s manager, "Gary Payne" approximately two months after Plaintiff first started working for Capital Contractors, Inc. through Top Notch Cleaning Solutions, LLC.

34.     Plaintiff initially met Mr. Payne at H&M, when Mr. Payne walked up to Plaintiff and made it clear that he wanted the Plaintiff to clean the store with a back-pack vacuum.

35.     Plaintiff, not knowing that Mr. Payne essentially supervised all work being performed, responded: "worry about what you're here to do, and don't worry about me."

36.     Immediately thereafter, Mr. Deion Cannon stopped Plaintiff and asked "what did you say to Gary?"

37.     Plaintiff advised Mr. Cannon what he said, and then Mr. Cannon – referring to Mr. Payne - advised Plaintiff: "that's Capital," "he's the one who pays us – gives us the accounts."

38.     Mr. Cannon then formally introduced the Plaintiff and Mr. Payne, wherein that conversation, Mr. Payne told Plaintiff:  "I like how you work."

39.     Thereafter, Plaintiff and Mr. Payne frequently interacted, as Mr. Payne would come in and check on the cleanings being performed.  Plaintiff would use the back pack vacuum that Mr. Payne requested that he use.

40.     Mr. Payne was also aware that Plaintiff also performed the cleanings at Texas Roadhouse.

41.     During the course of Plaintiff's employment, Plaintiff advised Mr. Payne that he was "tired of working 12-16 hour days."

42.     Beginning in late 2015, Capital Contractors, Inc. informed Top Notch Cleaning Solutions, LLC (the Cannons) that they were in default of a requirement to obtain worker's compensation insurance.

43.     As a result, Capital Contractors, Inc. refused to pay Top Notch Cleaning Solutions, LLC, who then refused to pay its cleaning workers.

44.     This nonpayment of wages continued for a significant period of time, and Plaintiff informed Mr. Payne that he was not getting paid.

45.     In fact, many workers quit Top Notch Cleaning Solutions, LLC after waiting more than month to get paid, which upon information and belief, was a fact known to Capital Contractors, Inc.

46.     Plaintiff was finally paid on or around January 29, 2016.

47.     On or around February 1, 2016, Mr. Payne attempted to recruit Plaintiff from Top Notch Cleaning Solutions, LLC, and told Plaintiff: "why are you working for them?  You should be running your own business?"  Mr. Payne further added:  "it only takes $300-$400 to get your business license."

48.     Plaintiff responded, "I don't have a vehicle."  (To get to work, Plaintiff was using a

personal vehicle of the Cannons and he would pay for its gas).

49.     Mr. Payne responded, "you should work on that, I know what type of work you do, and I have a guy who will work with you to help you to open your own business and be assigned accounts" from Capital Contractors, Inc.

50.     Plaintiff worked until February 19, 2016, whereupon his employment was terminated for petty reasons relating to a disagreement with Mr. Cannon.

51.     Plaintiff was not paid at all for 4 days of work following his termination.

52.     After Plaintiff's termination, he received a call from someone working for Capital Contractor, Inc., who indicated that he was "with Capital" and wondering whether the Plaintiff was looking for work.

53.     This is the business model of Capital Contractors, Inc.  Capital Contractors, Inc. recruits unsophisticated individuals to "open their own business" and receive cleaning contractor accounts.

54.     Upon information and belief, the entire business model of Capital Contractors, Inc. involves subcontracting cleaning work to individuals whom it enlists as subcontractors.

55.     Capital Contractors, Inc. provides not just the location to be cleaned, but also details the manner in which the work will be performed.

56.     Capital Contractors, Inc. website refers to itself as "national leaders in commercial janitorial services."   http://capitalcontractors.com/application-process/ (last visited June 20, 2016)

57.     Capital Contractors, Inc. recruits unsophisticated workers to become its "service partners."

58.     Upon information and belief, Capital Contractors, Inc. relies almost exclusively, if not

exclusively, on its "service partners" who it labels as "independent contractors" to perform its commercial janitorial services.

59.     Defendant Top Notch Cleaning Solutions, LLC is, upon information and belief, one of Capital Contractors, Inc.'s "service partners."

60.     All that is required to be one of Capital Contractors, Inc.'s "service partners" is the execution of a "independent contractor agreement," an agreement to comply with a "Code of Conduct," the completion of a "business questionnaire," a signed IRS Form W-9, and obtaining proof of insurance, including commercial insurance.

61.     Given the general unsophisticated nature of the cleaners that Capital Contractors, Inc. contracts with (which includes, upon information and belief, immigrants who are generally unfamiliar with the English language and/or who are in the United States without proper employment authorization), Capital Contractors, Inc.'s website states:

> While all of this sounds complicated, it is all actually fairly standard and simple for your insurance agent or broker to handle. Capital would be happy to communicate directly with your insurance agent or broker to arrange.

http://capitalcontractors.com/application-process/ (last visited June 20, 2016)

62.     So, in other words, even the "complicated" task of procuring insurance can be handled by and through Capital Contractors, Inc.   In fact, upon information and belief, Capital Contractors, Inc. will assist a "service provider" in obtaining virtually everything that it might need to perform cleaning for them, from an insurance agent that it refers candidates to controlling the cleaning products, tools and methods used in the commercial cleaning of its establishments.

63.     Furthermore, Capital Contractors, Inc. collects all monies and handles all details relating to its commercial cleaning service contracts.   Capital Contractors, Inc. has a staff of "B2B"

(business to business) salespersons to obtain cleaning contracts.

64.     Upon information and belief, Capital Contractors, Inc. has a history of payment issues with its service providers, including withholding payment to Defendant Top Notch Cleaning Solutions, LLC, resulting in the failure of Top Notch Cleaning Solutions, LLC to pay the workers it had assigned to cleaning contracts provided by Capital Contractors, Inc.

65.     Plaintiff was not exempt under the FLSA's minimum wage and overtime requirements, and was not exempt from the MWHL's minimum wage requirements.

66.     During all periods of Plaintiff's employment, Plaintiff worked in excess of a forty hour workweek and was not compensated in an amount that equal or exceeded at 1 ½ times the minimum wage under Federal or State law.

67.     Plaintiff was in fact paid substantially less than the full minimum wage required under the FLSA and the MWHL.  Plaintiff did not even receive his pay for his last four days of employment.

68.     There is a direct connection between Plaintiff's nonpayment and underpayment of wages by Defendant Top Notch Cleaning Solutions, LLC, and the nonpayment and underpayment of monies from Capital Contractors, Inc. to Defendant Top Notch Cleaning Solutions, LLC.

## Causes of Action

### COUNT I
**(FLSA - Failure to Pay Minimum Wage)**
**(Plaintiff v. All Defendants - Joint Employers)**

69.     Plaintiff incorporate paragraphs 1-68 as set forth above, and state that Defendants' actions complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage), because Defendants at all times during the Plaintiffs' employment, failed to pay the Plaintiff the

proper minimum wage rate, free and clear.

70.    Defendants Capital Contractors, Inc. and Top Notch Cleaning Solutions, LLC share control over the Plaintiff, both directly and indirectly, by virtue of the fact that Capital Contractors, Inc. controls Top Notch Cleaning Solutions, LLC.

71.    Top Notch Cleaning Solutions, LLC existed for the primary purpose of performing the commercial janitorial services for Capital Contractors, Inc.  Capital Contractors, Inc. claims to be a "national leader" in commercial janitorial services, but the evidence, upon information and belief, will reveal that Capital Contractors, Inc. has little to no actual cleaners on its payroll, and relies on "B2B" (business to business) sales persons and other personnel in the field who supervise the work being performed by "service partners."

72.    Capital Contractors, Inc. controls the manner and means by which work is performed, even down to what sort of vacuum is used at a worksite.  Capital Contractors, Inc. provides "access" to cleaning chemicals, supplies, and equipment to its "service partners."  Capital Contractor's website states that "Capital works with you to assist you in training your employees so that you can do the job right, and we partner with you to resolve any customer issues."  http://capitalcontractors.com/benefits-of-becoming-a-partner/ (lasted visited June 23, 2016).

73.    Capital Contractors, Inc. collects all monies from any cleaning contracts, and pays a percentage of monies to service partners, thus establishing and maintaining a financial domination over the service partners, who are not independent business people but rather persons who depend on Capital Contractors, Inc. for their livelihood.

74.    In fact, all persons including the Plaintiff, who perform cleaning for or on behalf of Capital Contractors, Inc., are economically dependent on Capital Contractors, Inc. for their

livelihood, as witnessed in this case by the fact that when Capital Contractors, Inc. refused to make payment to Top Notch Cleaning Solutions, LLC, its so-called "service partner," none of the workers got paid.

75.     As a result, Plaintiff is jointly employed by both Capital Contractors, Inc. and Top Notch Solutions, Inc., and has the legal right to receive and collect the full minimum wage, as required by Federal law and applicable Federal regulations, from any of the Defendants.

## COUNT II
### (FLSA - Failure to Pay Overtime Wages)
### (Plaintiff v. All Defendants - Joint Employers)

76.  Plaintiff incorporates paragraphs 1-75 as set forth above, and state, in addition, that Defendants' actions complained of herein constitute a violation of Section 207 of the FLSA, because Defendants, joint employers of the Plaintiff, failed to pay the Plaintiff overtime wage for certain statutory work weeks, and as a result, Plaintiff has failed to receive overtime pay, as required by Section 207 of the FLSA, 29 U.S.C. § 207.

## COUNT III
### (Maryland Wage/Hour Law - Failure to Pay Minimum Wage)
### (Plaintiff v. All Defendants - Joint Employers)

77.     Plaintiff incorporates paragraphs 1-76 as set forth above, and state that Defendants' actions complained of herein constitute a violation of Md. Ann. LE art. 3-401 et seq. (minimum wage), because Defendants, joint employers of the Plaintiff, at all times during the Plaintiff's employment, failed to pay the Plaintiff the proper minimum wage rate under the Maryland Wage/Hour Law, free and clear.

78.     As a result, Plaintiffs have a legal right to receive the full minimum wage, as required by Maryland Wage/Hour law and applicable Maryland regulations.

## COUNT IV
### (Maryland Wage/Hour Law - Failure to Pay Overtime Wages)
### (Plaintiff v. All Defendants - Joint Employers)

79.    Plaintiff incorporates paragraphs 1-78 as set forth above, and state that Defendants'

actions complained of herein constitute a violation of Md. Ann. LE art. 3-401 et seq. (overtime

wages), because Defendants, joint employers of the Plaintiff, at all times during the Plaintiff's

employment, failed to pay the Plaintiff overtime in one and one-half times the proper minimum

wage rate under the Maryland Wage/Hour Law, free and clear, for all hours worked over 40

hours in a statutory workweek.

## COUNT V
### (Violation of MWPCL Act)
### (Plaintiff v. All Defendants - Joint Employers)

80.    Plaintiff incorporates paragraphs 1-79 as set forth above, and states that the actions of

Defendants, as joint employers of the Plaintiff, in failing to pay all minimum wages and

overtime wages due, is a violation of the MWPCL, Md. LE Art. § 3-501 *et seq.*

81.    There is no bona fide dispute between the parties as to the right of the Plaintiff to

receive the minimum wage and minimum overtime wages, free and clear.

82.    There is no dispute that Plaintiff performed the work of a non-exempt employee, and

that he was jointly employed by all Defendants.

83.    There is no dispute that Plaintiff worked long hours for pay that fell below the statutory

minimums established under Maryland Wage/Hour Law.

84.    Finally, there is no dispute that Plaintiff was not paid his final pay, and was subjected to

an unlawful deduction by Defendant Top Notch Cleaning Solutions, LLC.

85.    Plaintiff is thus entitled under MWPCL, Md. LE Art. § 3-501 *et seq.* to an award of

treble damages and attorneys' fees and costs with respect to the minimum wages and minimum

overtime wages that have gone unpaid.

## Prayer

Based on the foregoing allegations, Plaintiff respectfully requests that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a)     Order Defendants to pay Plaintiff all unpaid overtime premiums and minimum wages determined by the Court to be due and owing to the Plaintiff under the FLSA and MWHL, as well as a sum of liquidated damages under the FLSA/MWHL and/or statutory damages under the MWPCL, in an amount equal to the threes times the amount of any unpaid overtime premiums and minimum wages awarded to Plaintiff;

(b)     Award Plaintiff his attorneys' fees and costs in pursuing this action;

(c)     Award Plaintiff interest on any sums determined due and owing from Defendants, including pre-judgment interest on the Plaintiffs' MWHL claims and attorneys' fees and costs in pursuing this action; and

(d)     Grant Plaintiff any additional relief that the Court deems appropriate and just.

Respectfully submitted,


/s/ *Howard B. Hoffman*_____          /s/_ *(with permission)*_____
Howard B. Hoffman                     Bradford W. Warbasse
Federal Bar No. 25965                 Federal Bar No. 07304
600 Jefferson Plaza, Ste. 304         401 Washington Avenue, Ste. 200
Rockville, Maryland 20852             Towson, Maryland 21204
(301) 251-3752                        (410) 337-5411

*Counsel for Plaintiff*                  *Counsel for Plaintiff*

**<u>Jury Demand</u>**

The Plaintiff, by his attorney, hereby demands a jury trial as to all issues triable by a jury.

*<u>/s/ Howard B. Hoffman</u>*
Howard B. Hoffman, Esq.